**THE MALONEY FIRM, APC**
GREGORY M. SMITH - **State Bar No. 259971**
PATRICK M. MALONEY - **State Bar No. 197844**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: (310) 540-1505 │ F: (310) 540-1507
E: gsmith@maloneyfirm.com
E: pmaloney@maloneyfirm.com

Attorneys for Plaintiffs, SANTOS SAUL ALVAREZ
BARRAGAN and SA HOLIDAY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS SAUL ALVAREZ BARRAGAN; SA HOLIDAY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DAZN NORTH AMERICA INC.; DAZN MEDIA INC.; DAZN US LLC; PERFORM INVESTMENT LIMITED; GOLDEN BOY PROMOTIONS, LLC; GOLDEN BOY PROMOTIONS, INC.; OSCAR DE LA HOYA; AND DOES 1-25, <br><br> Defendants, | Case No.: 2:20-cv-8226 <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT;** <br> 2. **BREACH OF CONTRACT;** <br> 3. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;** <br> 4. **INTENTIONAL INTERFERENCE WITH CONTRACT;** <br> 5. **NEGLIGENT INTERFERENCE WITH CONTRACT;** <br> 6. **INTENTIONAL INTERFERENCE PROSPECTIVE ECONOMIC RELATIONS;** <br> 7. **NEGLIGENT INTERFERENCE PROSPECTIVE ECONOMIC RELATIONS;** <br> 8. **FRAUD - CONCEALMENT;** <br> 9. **BREACH OF FIDUCIARY DUTY; AND** <br> 10. **DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

For their Complaint, Plaintiffs SANTOS SAUL ALVAREZ BARRAGAN and

SA HOLIDAY, INC. (collectively "Alvarez" or "Canelo"), allege as follows:

COMPLAINT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## INTRODUCTION

1.      This lawsuit arises from the breach of the single largest contract in this history of boxing, and one of the largest in all of sport.

2.      SANTOS SAUL ALVAREZ BARRAGAN is a professional boxer who is widely thought to be amongst the best of his generation; he is a four-division world champion.  Alvarez is known to his fans worldwide as "Canelo."

3.      Defendants GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC., and OSCAR DE LA HOYA (collectively "Golden Boy Promotions") have been Alvarez' boxing promotors since approximately 2010.

4.      Defendants DAZN NORTH AMERICA INC., DAZN MEDIA INC., DAZN US LLC, and PERFORM INVESTMENT LIMITED (collectively "DAZN") are a worldwide "over the top" sports broadcaster that airs boxing matches, amongst other events, via the DAZN website and app available on phones, tablets, smart tvs, and similar devices.[1]

5.      Early on the morning of October 17, 2018, ESPN reported, "Canelo Alvarez signs 5-year, 11-fight deal worth minimum $365 million with DAZN."[2] Hours later, Eric Gomez ("Gomez"), President of Golden Boy Promotions, took the stage at a press conference at Madison Square Garden to officially announce the news.[3]  Gomez said:

> …For us this a major day today, there is historic news and we are very happy to share with all of you…Us at Golden Boy took a major step … by finalizing a deal with the sports streaming leader in the world, DAZN, so we're very excited about that.  Canelo will start a new era of sports with having his next 11 fights with DAZN…. Obviously for

---

[1] Plaintiffs are informed and believe that one or all of the DAZN defendants are the successors of interest to Perform Investment Limited.

[2] https://www.espn.com/boxing/story/_/id/25003974/canelo-alvarez-signs-5-year-11-fight-deal-worth-365-million-dazn

[3] https://www.youtube.com/watch?v=SRAQhuc5fvQ

COMPLAINT

Canelo this is historic as well…*he's got the richest guaranteed contract in sports history*; so that is very exciting for him.

6.     Moments later, John Skipper ("Skipper"), DAZN's Executive Chairman, took the stage.  He said:

Right now, Canelo Alvarez is the most important fighter in pay-per-view….His next 11 fights will be available exclusively internationally on DAZN…During the course of this deal, five years and the next 11 Canelo fights,  DAZN will return premium boxing matches to fight fans for a reasonable, affordable, subscription price and we will build a robust subscription base off the demonstrated existing demand for these fights.   Today represents a major shift in over-the-top sports content….

7.     In the 23 months since his union with Golden Boy and DAZN, Alvarez has fought in three boxing matches.  He defeated Rocky Fielding on December 15 2018 to capture the WBA World Super Middleweight title; he defeated Danny Jacobs on May 4, 2019 to unify the WBC, WBA, and IBF World Middleweight titles; and he defeated Sergey Kovalev on November 2, 2019 to capture the WBO World Light Heavyweight title.

8.     Boxing fans and boxing media recognized the greatness of Alvarez' 2019 campaign.  Sports Illustrated, ESPN, Ring Magazine, the Athletic, and the Boxing Writers Association of America named Canelo their 2019 Fighter of the Year. Following Alvarez' knockout of Kovalev, Ring Magazine "The Bible of Boxing" elevated Alvarez to the top spot on their mythical pound-for-pound fighter ratings.

9.     Despite Alvarez' successes, both DAZN and Golden Boy have broken the promises they made to each other, Alvarez, and boxing fans; in doing so Defendants have breached their respective contracts and caused Alvarez damages of – at least - $280 million.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff SANTOS SAUL ALVAREZ BARRAGAN is a citizen of the Country of Mexico.

11.     Plaintiff SA HOLIDAY, INC. is a Nevada Corporation with its principle place of business in the State of Nevada.

12.     Plaintiffs are informed and believe that Defendant DAZN NORTH AMERICA INC. is a Delaware Corporation with its principle place of business in the State of New York.

13.     Plaintiffs are informed and believe that Defendant DAZN MEDIA INC. is a New York Corporation with its principle place of business in the State of New York.

14.     Plaintiffs are informed and believe that Defendant DAZN US LLC is a Delaware Limited Liability Company with its principle place of business in the State of New York.

15.     Plaintiffs are informed and believe that Defendant PERFORM INVESTMENT LIMITED is a New York Limited Liability Company with its principle place of business in the State of New York.

16.     Plaintiffs are informed and believe that one or all of the DAZN defendants are the successors of interest to PERFORM INVESTMENT LIMITED, a New York Limited Liability Company.

17.     Plaintiffs are informed and believe that Defendant GOLDEN BOY PROMOTIONS, LLC, is a Delaware Limited Liability Company with its principle place of business in Los Angeles, California.

18.     Plaintiffs are informed and believe that Defendant GOLDEN BOY PROMOTIONS, INC. is a California Corporation with its principle place of business in Los Angles, California.

19.     Plaintiffs are informed and believe that Defendant OSCAR DE LA HOYA is an individual and a citizen of the State of California who resides in Los

4

COMPLAINT

Angeles County.

20.    Plaintiffs do not know the true names and capacities of defendants sued as DOES 1 through 25, who therefore sues said defendants under their fictitious names.  Plaintiffs will seek leave to amend this complaint when the true names and capacities of these defendants have been ascertained.

21.    At all times mentioned each defendant was an agent, principal, representative, alter ego and/or employee of the others and each was at all times acting within the course and scope of said agency, representation and/or employment and with the permission of the others.

22.    This Court has jurisdiction over the subject matter of Plaintiffs' Complaint under 28 § 1441(a) because the Complaint is within this Court's original jurisdiction under 28 U.S.C. § 1332(a).

23.    This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and nations and the amount in controversy exceeds the jurisdictional threshold of $75,000.

24.    The Court has personal jurisdiction over the Defendants and venue is proper in the Central District of California because: 1) Golden Boy Promotions is based in Los Angeles County, within the Central District of California; 2) Oscar De La Hoya resides in Los Angeles County, within the Central District of California; and 3) DAZN has employees, conducts business, and broadcasts to customers within the Central District of California.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The Agreement Between Golden Boy Promotions and DAZN

25.    Plaintiffs are informed and believe that on or about October 11, 2018 Golden Boy Promotions and DAZN entered into a contract for DAZN to broadcast boxing matches arranged and promoted by Golden Boy Promotions ("the DAZN Contract") until, at least 2023.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

26.     Alvarez, who, at that time, held the WBC, WBA and IBF World Middleweight titles was the crown jewel of the DAZN Contract.  Alvarez' previous three bouts had each sold over 1 million domestic pay-per-view buys and had generated hundreds of millions of dollars in revenue worldwide.

27.     Plaintiffs are informed and believe that the DAZN Contract required DAZN to pay to Golden Boy Promotions a license fee of $40 million dollars per bout for ten Alvarez bouts expected to occur in the years 2019 to 2023.  The DAZN Contract required DAZN to pay a reduced license fee for a December 2018 Alvarez bout with Rocky Fielding.  Plaintiffs are informed and believe that at the time Golden Boy Promotions and DAZN entered into the DAZN Contract, the Defendants expected and understood that the bulk of the license fee to be paid to Golden Boy Promotions would flow to Alvarez as his purse for the bouts.

28.     Plaintiffs are informed and believe that the DAZN Contract required DAZN to pay significantly smaller license fees to broadcast up to ten annual boxing cards promoted and arranged by Golden Boy Promotions that did not feature Alvarez.

29.     Plaintiffs were not party to the negotiations of the DAZN Contract; although Plaintiffs have repeatedly requested copies of the DAZN Contract from both Golden Boy Promotions and DAZN, it has not been shared with them.

**The Agreement Between Golden Boy Promotions and Alvarez**

30.     In the early morning hours of October 17, 2018, Alvarez and Golden Boy Promotions executed a contract that gave Golden Boy Promotions the right to arrange and promote Alvarez' next eleven fights ("the Alvarez Contract" or together with the DAZN Contract, "the Contracts").[4]

---

[4] Prior to the execution of the Alvarez Contract, Golden Boy Promotions promoted Alvarez under an agreement wherein the parties contractually split the revenue generated from Alvarez' pay-per-view bouts.  The Alvarez Contract gave Alvarez continuing rights to audit revenues, expenses, and payments under it and the prior agreement.  An audit is presently ongoing and Alvarez reserves all rights to recoup unpaid revenues or overcharged expenses for any of his bouts promoted by Golden Boy Promotions.

COMPLAINT

31.     The Alvarez Contract required Golden Boy to pay Alvarez guaranteed payments totaling $365 million for his next eleven boxing matches ($15 million for the December 2018 bout with Rocky Fielding and $35 million dollars for each of his ten bouts thereafter), expected to be on or about May 5 and September 15 of the years 2019 to 2023.[5]  Pursuant to the Alvarez Contract, Oscar De La Hoya, Golden Boy Promotions' CEO, personally assumed liability for all guaranteed payments.

32.     The Alvarez Contract also specified the division of ticket revenues (the "gate") from the bouts under the agreement between Plaintiffs and Golden Boy Promotions.

33.     Other than Mr. Fielding, the Alvarez Contract did not require Alvarez to box any specific opponent.  Instead, it specified that Alvarez' opponents "be mutually selected by [Alvarez] and [Golden Boy Promotions], subject to [Alvarez'] final approval, not to be unreasonably withheld."  Notably, the Alvarez Contract did not mention that DAZN would have any right to accept or reject any opponents selected by Alvarez.

34.     The Alvarez Contract carved out specific potential opponents – including former world middleweight champion, Gennady Golovkin – as requiring a guaranteed payment of no less than $35 million, to be separately negotiated between Alvarez and Golden Boy Promotions.

35.     At the same time Plaintiffs executed the Alvarez Contract, Alvarez also signed a Deed acknowledging that Golden Boy Promotions had contracted that his next eleven bouts, including two in each 2019 to 2023, would be broadcast by DAZN and that he would actively participate in agreed promotional activities related to those bouts.

---

[5] The weekends of Cinco de Mayo and Mexican Independence Day have traditionally been the time when boxings biggest stars have put on its biggest bouts  It is Alvarez' custom and practice to celebrate his Mexican heritage by boxing on the Saturday night closes to each holiday.  See, https://www.espn.com/boxing/story/_/id/19315783/how-cinco-de-mayo-became-boxing-holiday-canelo-alvarez-vs-julio-cesar-chavez-jr

COMPLAINT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## The Bouts and the Defendants' Breaches

36.     On December 15, 2018, Alvarez beat Mr. Fielding by TKO in the third round of their bout to capture the WBA World Super Middleweight title.

37.     Prior to the Fielding bout, Alvarez participated in all requested customary promotional activities for world title fights, such as allowing DAZN to film certain training sessions, participating in live and remote press conferences and interviews, participating in public workouts, appearing on popular shows to discuss the upcoming bout, signing hundreds of promotional products, and posting about his training and the bout on his social media channels.

38.     On or about January 17, 2019, Alvarez announced on Twitter that his next opponent would be fellow middleweight champion Danny Jacobs.  Plaintiffs are informed and believe that the idea for a bout with Jacobs originated with DAZN, which wanted to sign Mr. Jacobs to a multi-bout contract and use the bout with Alvarez to promote Jacobs' novel backstory (Mr. Jacobs came back from mid-career bone cancer to capture a world title).

39.     On May 4, 2019, Alvarez beat Mr. Jacobs by unanimous decision to unify the middleweight division.  Alvarez left the bout holding the WBC, WBA, and IBF World Middleweight titles.  Just days later, it was reported that DAZN executives were "thrilled" that the Jacobs bout drew 1.2 million viewers for DAZN.[6]

40.     Prior to the Jacobs bout, Alvarez participated in all requested customary promotional activities for world title fights, such as allowing DAZN to film certain training sessions, participating in live and remote press conferences and interviews, participating in public workouts, appearing on popular shows to discuss the upcoming bout, signing hundreds of promotional products, and posting about his training and the bout on his social media channels.

---

[6] https://www.latimes.com/sports/boxing/la-sp-boxing-dazn-canelo-jacobs-20190508-story.html

41.     In the spring of 2019, Alvarez expressed interest in a bout with WBO World Light Heavyweight Champion Sergey Kovalev.  Around this time, Alvarez became aware that DAZN was growing frustrated at his choice of desired opponents. Alvarez came to understand that DAZN believed that DE LA HOYA and/or other representatives of Golden Boy Promotions had promised – either contractually or otherwise – that Alvarez would select Gennady Golovkin as one of his 2019 opponents.  Prior to these discussions with Defendants, Alvarez was unaware that DAZN believed Golden Boy Promotions had promised that he would fight Golovkin, unaware that the DAZN Contract gave DAZN the right to reject the opponents he selected, and was unaware that the DAZN Contract contained clauses potentially inconsistent with those of the Alvarez Contract.

42.     After discussions between Alvarez, Golden Boy Promotion, and DAZN, it was agreed that Alvarez would face Mr. Kovalev in the fall of 2019.  However, due to a delay in all parties agreeing to the opponent, the bout could not be set for September 14 and had to be delayed until November 2.

43.     At a press conference, days prior to Kovalev bout, DAZN's Executive Vice President, Joe Markowski, called Canelo v. Kovalev the biggest fight that DAZN had put on in the United States.  He described Canelo as "truly admirable" for moving up two weight classes to challenge "the biggest name in the division" and said about Alvarez, "We couldn't ask for a better partner."[7]

44.     On November 2, Alvarez knocked out Mr. Kovalev in the eleventh round to capture a world champion in his fourth weight class.

45.     Prior to the Kovalev bout, Alvarez participated in all requested customary promotional activities for world title fights, such as allowing DAZN to film certain training sessions, participating in live and remote press conferences and interviews, participating in public workouts, appearing on popular shows to discuss

---

[7] https://www.youtube.com/watch?v=rPaQdRMIbPw

COMPLAINT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

the upcoming bout, signing hundreds of promotional products, and posting about his training and the bout on his social media channels.

46.     Boxing fans and the boxing press recognized that Alvarez 2019 bouts were amongst the greatest year for any boxer ever.  He was honored with Fighter of the Year by Ring Magazine, ESPN, The Athletic, Sports Illustrated, and the Boxing Writers Association of America.[8]

47.     In 2019 Alvarez also undertook efforts to promote other bouts broadcast by DAZN as well as promoting DAZN itself.  For example, on or about March 30, 2019, Alvarez traveled to Indio, California to watch Ryan Garcia box Jose Lopez; without compensation, Alvarez appeared on the DAZN broadcast, was interviewed, and posted clips of the event on his social media platforms.  Similarly, in December 2019, Alvarez traveled to Saudi Arabia to watch Andy Ruiz Jr. box Anthony Joshua; without compensation, Alvarez appeared on the DAZN broadcast, was interviewed, and posted clips of the event on his social media platforms.

48.     In late 2019 and early 2020, the Parties began discussions regarding potential opponents and venues for Alvarez' 2020 bouts.  In or about March 2020, there was agreement between the Parties regarding an opponent and venue for Alvarez' May 2020 bout, but that bout was never finalized announced due to the then-spreading COVID-19 pandemic, which eventually caused sports events worldwide to be postponed or cancelled for most of the spring of 2020.

49.     In or about May 2020, governing bodies across boxing – state athletic commissions and titling organizations – began to release protocols for holding bouts while being mindful of COVID-19.  For the vast majority of jurisdictions, these protocols required COVID-19 testing, a "bubble" or "campus" arrangement in the days leading up to the bout, and attendance limited to only those required to put on the

---

[8] https://www.bwaa.org/single-post/2020/01/17/Canelo-Alvarez-Is-The-BWAA-2019-Fighter-Of-The-Year

COMPLAINT

1    events – fans were generally excluded.

2         50.    In or about May 2020, and continuing thereafter, the Parties resumed

3    their discussions regarding plans for Alvarez' 2020 bouts.  The Parties discussed

4    holding boxing matches at venues that would be impossible with fans – such as the

5    top of skyscrapers – but could elevate a "COVID-19 Era" event to historic and

6    spectacular.  Both Alvarez and Golden Boy Promotions acknowledged that bouts

7    without fans would deprive them of the gate, but agreed that they were willing to

8    forgo that revenue for the benefit of boxing fans and DAZN.  During these

9    discussions, DAZN inquired if Golden Boy Promotions and Alvarez would be willing

10   to accept immediate payment of less than the $40 million license fee for 2020 bouts in

11   exchange for delayed or alternate compensation.  Golden Boy Promotions and Alvarez

12   agreed they would evaluate such offers in good faith if they were made, but that time

13   was of the essence because Alvarez was ready, willing, and able to face world-class

14   opponents in both September and December 2020 and the bouts would need to be

15   arranged quickly.  In discussions, the Parties all acknowledged that the Contracts

16   already specified the required payments between them.

17        51.    Despite repeated promises that an alternative offer was imminent, DAZN

18   failed to make a proposal to either Golden Boy Promotions or Alvarez for several

19   months.  When Golden Boy Promotions and Alvarez proposed opponents, DAZN

20   refused to confirm that it was prepared to broadcast Alvarez' September 2020 bout or

21   that it would pay the contracted $40 million license fee.

22        52.    On June 24, 2020 – approximately 10 weeks before Alvarez' expected

23   September bout date and the time when Alvarez would need to begin training camp

24   for a bout in mid-September 2020 – Alvarez' counsel wrote to Golden Boy

25   Promotions and DAZN to confirm that Alvarez was prepared to face multiple

26   potential world-class opponents, but that DAZN and Golden Boy Promotions needed

27   to affirm their commitments so that the bout could be finalized, promoted, and his

28   training could commence.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

COMPLAINT

53.     In response, DAZN responded with an anticipatory breach of the DAZN and Alvarez Contracts.  It unambiguously stated that it would not pay the required license fee, and provided a with a series of excuses, including, but not limited to, the fact that Alvarez had not fought Mr. Golovkin in 2019 and that Golden Boy Promotions had not put forth a plan for a second Alvarez fight in 2020.

54.     After extended discussions between the parties, DAZN offered to pay Alvarez and Golden Boy Promotions a fraction of the contracted $40 million license fee in cash and some DAZN stock in advance of a potential IPO.  However, the entire value of the package – for a bout against another World Champion – was substantially less than Alvarez' contractual guarantee.

55.     Given that DAZN had made it clear that it would not honor its contract, throughout the spring and summer of 2020, Alvarez repeatedly asked Golden Boy Promotions to explore alternative broadcast options for a fall 2020 bout.  Although Golden Boy Promotions reported that it was talking to various broadcasters, it failed to put forth a single alternative plan by which it would pay Alvarez the $35 million it had promised him for each of his fights.

56.     Alvarez has fought the first three of his eleven fights under the Alvarez and DAZN Contracts, he is owed remaining guaranteed payments of $280 million dollars.

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**BY PLAINTIFFS AGAINST DAZN NORTH AMERICA INC., DAZN MEDIA INC., DAZN US LLC, PERFORM INVESTMENT LIMITED, AND DOES 1-13**

57.     Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

58.     In October 2018, DAZN and Golden Boy Promotions entered into the DAZN Contract.  Plaintiffs were intended third-party beneficiaries to the DAZN Contract, which was executed primarily so that DAZN would have the right to

COMPLAINT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

broadcast bouts featuring Alvarez, boxing's biggest star.

59.    Pursuant to the Contracts, Golden Boy Promotions was to arrange and promote, and DAZN was to broadcast, Alvarez' next eleven professional boxing matches, and Alvarez was to be paid a guaranteed total of $365 million dollars.

60.    Since the execution of the Contracts, Alvarez has done all, or substantially all, of the things required by the Alvarez Contract.  Alvarez won three consecutive world title fights, was named Fighter of the Year, and Pound for Pound Number 1.  He also undertook all requested customary promotional activities, and also promoted other boxing matches promoted and/or broadcast by Defendants, going beyond the minimum of his contractual obligations.

61.    Despite Alvarez' efforts and amazing successes, DAZN and the DOES have breached the Contracts by refusing to pay the required and agreed license fee to broadcast Alvarez' future bouts.

62.    DAZN and DOES' breaches have caused Alvarez to suffer harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
## BY PLAINTIFFS AGAINST GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC., OSCAR DE LA HOYA, AND DOES 14-25

56.    Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

57.    In October 2018, Alvarez and Golden Boy Promotions entered into the Alvarez Contract.  Pursuant to the Contract, Golden Boy Promotions was to arrange and promote, and DAZN was to broadcast, Alvarez' next eleven professional boxing matches, and Alvarez was to be paid a guaranteed total of $365 million dollars.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

59.     Since the execution of the Contracts, Alvarez has done all, or substantially all, of the things required by the Alvarez Contract.  Alvarez won three consecutive world title fights, was named Fighter of the Year, and Pound for Pound Number 1.  He also undertook all requested customary promotional activities, and also promoted other boxing matches promoted and/or broadcast by Defendants, going beyond the minimum of his contractual obligations.

60.     Despite Alvarez' efforts and amazing successes, Golden Boy Promotions and DOES have breached the Contracts by refusing to pay Alvarez his guarantees for upcoming and future bouts.

61.     The behavior and breaches of Golden Boy Promotions and DOES cannot simply be cast onto DAZN's failure to pay its license fee.  In the Alvarez Contract Golden Boy Promotions and De La Hoya personally committed to make the guaranteed payments.  After DAZN announced it would breach its obligations to pay the license fee, Alvarez accommodated Golden Boy with several weeks to find an alternative means of broadcasting his bouts and paying his guarantee.  Golden Boy Promotions failed to present a single plan thereafter.

63.     Golden Boy Promotions and DOES' breaches have caused Alvarez to suffer harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

## THIRD CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
## BY PLAINTIFFS AGAINST ALL DEFENDANTS

64.     Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

65.     In October 2018, the Alvarez and the Defendants entered into the Contracts.  Plaintiffs were signatories to the Alvarez Contract, and intended third-party beneficiaries to the DAZN Contract.

14

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

66.     Pursuant to the Contracts, Golden Boy Promotions was to arrange and promote, and DAZN was to broadcast, Alvarez' next eleven professional boxing matches, and Alvarez was to be paid a guaranteed total of $365 million dollars.

67.     Since the execution of the Contracts, Alvarez has done all, or substantially all, of the things required by the Alvarez Contract.  Alvarez won three consecutive world title fights, was named Fighter of the Year, and Pound for Pound Number 1.  He also undertook all requested customary promotional activities, and also promoted other boxing matches promoted and/or broadcast by Defendants, going beyond the minimum requirements of his contractual obligations.

68.     Despite Alvarez' efforts and amazing successes, the Defendants have interfered with Alvarez' rights to receive the benefits of the Contracts by refusing to pay the guaranteed sums to promote and/or broadcast Alvarez' future bouts.

69.     Defendants have caused Alvarez to suffer harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACT

## BY PLAINTIFFS AGAINST DAZN NORTH AMERICA INC., DAZN MEDIA INC., DAZN US LLC, PERFORM INVESTMENT LIMITED, AND DOES 1-13

70.     Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

71.     In October 2018, the Alvarez and Golden Boy Promotions entered into the Alvarez Contract by which Golden Boy Promotions was to pay Alvarez guaranteed sums totaling $365 million dollars to arrange and promote his next eleven bouts, to be broadcast by DAZN.

72.     DAZN and DOES knew of the Alvarez Contract because it was widely covered by the boxing press, because DAZN's Global Chairman was present when the

15

Alvarez Contract was officially announced, because DAZN officials referenced it thereafter, and because Alvarez, Golden Boy Promotions, and DAZN worked collectively for nearly two years to promote Alvarez bouts broadcast on DAZN.

73.     Despite the successes of Alvarez' 2019 bouts, DAZN and DOES refused to affirm it would pay its contracted license fee for Alvarez's bouts in 2020 and beyond.  Instead it offered Alvarez and Golden Boy Promotions substantially less than the agreed upon license fee and refused to approve opponents for Alvarez.

74.     DAZN and DOES conduct prevented Golden Boy Promotions from arranging, promoting, and paying Alvarez for his bouts as required under the Alvarez Agreement.

75.     When DAZN and DOES refused to affirm it would pay the license fee due to Golden Boy Promotions and Alvarez, they intended to disrupt the performance of the Contracts or knew that disruption of performance was certain or substantially certain to occur.

76.     Due to DAZN and DOES interference, Alvarez has suffered harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

77.     DAZN and DOES were a substantial factor in causing Alvarez' harm.

78.     DAZN and DOES, by engaging in the aforementioned acts and omissions, and/or by authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard for the rights, welfare, and safety of Alvarez, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

///
///

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1

2

3

4

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

### FIFTH CAUSE OF ACTION

### NEGLIGENT INTERFERENCE WITH CONTRACT

### BY PLAINTIFFS AGAINST DAZN NORTH AMERICA INC., DAZN MEDIA INC., DAZN US LLC, PERFORM INVESTMENT LIMITED, AND DOES 1-13

79.    Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

80.    In October 2018, the Alvarez and Golden Boy Promotions entered into the Alvarez Contract by which Golden Boy Promotions was to pay Alvarez guaranteed sums totaling $365 million dollars to arrange and promote his next eleven bouts, to be broadcast by DAZN.

81.    DAZN and DOES knew or should have of the Alvarez Contract because it was widely covered by the boxing press, because DAZN's Global Chairman was present when the Alvarez Contract was officially announced, because DAZN officials referenced it thereafter, and because Alvarez, Golden Boy Promotions, and DAZN worked collectively for nearly two years to promote Alvarez bouts broadcast on DAZN.

82.    Despite the successes of Alvarez' 2019 bouts, DAZN and DOES refused to affirm it would pay its contracted license fee for Alvarez's bouts in 2020 and beyond.  Instead it offered Alvarez and Golden Boy Promotions substantially less than the agreed upon license fee and refused to approve opponents for Alvarez.

83.    DAZN and DOES conduct prevented Golden Boy Promotions from arranging, promoting, and paying Alvarez for his bouts as required under the Alvarez Agreement.

84.    When DAZN and DOES refused to affirm it would pay the license fee due to Golden Boy Promotions and Alvarez, they knew or should have known that their refusals would disrupt the performance of the Contracts.

85.    Due to DAZN and DOES interference, Alvarez has suffered harm and damages, including, but not limited to, the denied guaranteed payments, lost gate

17

revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

86.    DAZN and DOES were a substantial factor in causing Alvarez' harm.

## SIXTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE PROSPECTIVE ECONOMIC RELATIONS

## BY PLAINTIFFS AGAINST DAZN NORTH AMERICA INC., DAZN MEDIA INC., DAZN US LLC, PERFORM INVESTMENT LIMITED, AND DOES 1-13

87.    Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

88.    In October 2018, the Alvarez and Golden Boy Promotions entered into the Alvarez Contract by which Golden Boy Promotions was to pay Alvarez guaranteed sums totaling $365 million dollars to arrange and promote his next eleven bouts, to be broadcast by DAZN; this economic relationship probably would have resulted in future economic benefit to Alvarez.

89.    DAZN and DOES knew or should have known of the Alvarez Contract because it was widely covered by the boxing press, because DAZN's Global Chairman was present when the Alvarez Contract was officially announced, because DAZN officials referenced it thereafter, and because Alvarez, Golden Boy Promotions, and DAZN worked collectively for nearly two years to promote Alvarez bouts broadcast on DAZN.

90.    Despite the successes of Alvarez' 2019 bouts, DAZN and DOES refused to affirm it would pay its contracted license fee for Alvarez's bouts in 2020 and beyond.  Instead it offered Alvarez and Golden Boy Promotions substantially less than the agreed upon license fee and refused to approve opponents for Alvarez.

91.    DAZN and DOES's knew or should have known that its acts would prevent Golden Boy Promotions from arranging, promoting, and paying Alvarez for his bouts as required under the Alvarez Agreement.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

92.     When DAZN and DOES refused to affirm it would pay the license fee due to Golden Boy Promotions and Alvarez, they knew or should have known that they would disrupt the performance of the Contracts or knew that disruption of performance was certain or substantially certain to occur.

93.     Due to DAZN and DOES interference, Alvarez has suffered harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

94.     DAZN and DOES were a substantial factor in causing Alvarez' harm.

95.     DAZN and DOES, by engaging in the aforementioned acts and omissions, and/or by authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard for the rights, welfare, and safety of Alvarez, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT INTERFERENCE PROSPECTIVE ECONOMIC RELATIONS BY PLAINTIFFS AGAINST DAZN NORTH AMERICA INC., DAZN MEDIA INC., DAZN US LLC, PERFORM INVESTMENT LIMITED, AND DOES 1-13

96.     Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

97.     In October 2018, the Alvarez and Golden Boy Promotions entered into the Alvarez Contract by which Golden Boy Promotions was to pay Alvarez guaranteed sums totaling $365 million dollars to arrange and promote his next eleven bouts, to be broadcast by DAZN; this economic relationship probably would have resulted in future economic benefit to Alvarez.

98.     DAZN and DOES knew or should have known of the Alvarez Contract because it was widely covered by the boxing press, because DAZN's Global Chairman was present when the Alvarez Contract was officially announced, because

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

DAZN officials referenced it thereafter, and because Alvarez, Golden Boy Promotions, and DAZN worked collectively for nearly two years to promote Alvarez bouts broadcast on DAZN.

99.    Despite the successes of Alvarez' 2019 bouts, DAZN and DOES refused to affirm it would pay its contracted license fee for Alvarez's bouts in 2020 and beyond.  Instead it offered Alvarez and Golden Boy Promotions substantially less than the agreed upon license fee and refused to approve opponents for Alvarez.

100.   DAZN and DOES's knew or should have known that its acts would prevent Golden Boy Promotions from arranging, promoting, and paying Alvarez for his bouts as required under the Alvarez Agreement.

101.   When DAZN and DOES refused to affirm it would pay the license fee due to Golden Boy Promotions and Alvarez, they knew or should have known that they would disrupt the performance of the Contracts or knew that disruption of performance was certain or substantially certain to occur.

102.   Due to DAZN and DOES interference, Alvarez has suffered harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

103.   DAZN and DOES were a substantial factor in causing Alvarez' harm.

## EIGHTH CAUSE OF ACTION

## FRAUD - CONCEALMENT

## BY PLAINTIFFS AGAINST GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC., OSCAR DE LA HOYA, AND DOES 14-25

104.   Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

105.   In October 2018, the Alvarez and Golden Boy Promotions entered into the Alvarez Contract.  Other than Mr. Fielding, the Alvarez Contract did not require Alvarez to box any specific opponent.  Instead, it specified that Alvarez' opponents

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

"be mutually selected by [Alvarez] and [Golden Boy Promotions], subject to [Alvarez'] final approval, not to be unreasonably withheld."

106.   The Alvarez Contract did not require Alvarez to select Mr. Golovkin as his opponent in 2019, or at any time thereafter.  In fact, the Alvarez Contract required that a bout with Mr.  Golovkin would require additional guaranteed payment in excess of $25 million, to be separately negotiated.

107.   Notably, the Alvarez Contract did not mention that DAZN would have any right to accept or reject any opponents selected by Alvarez.  Alvarez was not told that Golden Boy Promotions had already entered into an agreement with DAZN that gave DAZN a role in approving his future opponents.  Neither did Golden Boy Promotions or DOES disclose that they had represented to DAZN that Alvarez would have a bout with Mr. Golovkin in 2019.

108.   Golden Boy Promotions and DOES intentionally failed to disclose that they had made representations and/or promises to DAZN that exceeded or were inconsistent with the terms of the Alvarez Contract.

109.   Had Golden Boy and DOES disclosed that their representations and/or promises to DAZN exceeded or were inconsistent with the terms of the Alvarez Contract, Alvarez reasonably would have behaved differently, negotiated differently, and may not have agreed to the Alvarez Contract without further protections.

110.   Alvarez is informed and believes that DAZN is now using the previously undisclosed representations and/or promises of Golden Boy Promotions and DOES as excuses for its failure to approve of and pay for Alvarez bouts in the fall 2020 and beyond.

111.   Due to Golden Boy Promotions and DOES representations to DAZN and concealment thereof, Alvarez has suffered harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

112.   Golden Boy Promotions and DOES were a substantial factor in causing Alvarez' harm.

113.   Golden Boy Promotions and DOES, by engaging in the aforementioned acts and omissions, and/or by authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard for the rights, welfare, and safety of Alvarez, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
## BY PLAINTIFFS AGAINST GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC., OSCAR DE LA HOYA, AND DOES 14-25

114.   Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

115.   In October 2018, the Alvarez and Golden Boy Promotions and DOES entered into the Alvarez Contract wherein Golden Boy Promotions was to arrange and promote Alvarez next eleven bouts.  By entering into the Alvarez Contract, Golden Boy Promotions and DOES became Alvarez' limited agents and undertook fiduciary obligations and duties.

116.   At that time and continuing thereafter, Golden Boy Promotions and DOES failed to consistently act in good faith in the best interests of Alvarez and failed to act as a reasonably careful promotor would have acted under the circumstances. After DAZN informed Alvarez and Golden Boy Promotions that it would not pay the license fee for Alvarez' anticipated September 2020 bout, Golden Boy acted in furtherance of its own interests by trying to preserve its opportunities for non-Alvarez bouts (and associated license fees) with DAZN.  Golden Boy Promotions failed to make any other proposal to Alvarez as to how it would get his bouts broadcast or pay the fees guaranteed him.

117.   Due to Golden Boy Promotions and DOES breaches of their fiduciary duties, Alvarez has suffered harm and damages, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue.

118.   Golden Boy Promotions and DOES were a substantial factor in causing Alvarez' harm.

119.   Golden Boy Promotions and DOES, by engaging in the aforementioned acts and omissions, and/or by authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard for the rights, welfare, and safety of Alvarez, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## DECLARATORY RELIEF
## BY PLAINTIFFS AGAINST ALL DEFENDANTS

120.   Alvarez incorporates by reference as if fully set forth herein each of the preceding allegations.

121.   An actual controversy has arisen and now exists between the parties regarding their rights and obligations under the Contracts

122.   Alvarez seek a judicial determination as to the legal rights and duties of the parties, including but not limited to that due to the Defendants breaches he is eligible to participate in bouts arranged and promoted by entities other than Golden Boy Promotions and broadcast by entities other than DAZN.

123.   A judicial determination of the parties right is necessary and appropriate to ensure that the prime years of Alvarez' career are not wasted to inactivity due to financial squabbles between Defendants in breach of the Contracts.

///

///

COMPLAINT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## **PRAYER**

WHEREFORE, Alvarez prays for relief as follows:

      1.     For compensatory damages according to proof, including, but not limited to, the denied guaranteed payments, lost gate revenue, and opportunities for ancillary revenue associated with bouts, such as sponsorships and apparel revenue, of no less than $280 million;

      2.     For punitive damages according to proof;

      3.     For attorneys' fees according to proof;

      4.     For costs of suit;

      5.     For judicial determination with Alvarez is eligible to participate in bouts arranged and promoted by entities other than Golden Boy Promotions and broadcast by entities other than DAZN;

      6.     For such other and further relief as the Court determines is necessary and proper under the circumstances.

## **JURY DEMAND**

      Plaintiffs demands a trial by jury.

Dated: September 8, 2020                  THE MALONEY FIRM LLP

                                   By:   /s/ Gregory M. Smith
                                        Gregory M. Smith
                                      Patrick M. Maloney
                      Attorneys for Plaintiffs, SANTOS SAUL ALVAREZ BARRAGAN AND SA HOLIDAY, INC.